Eugene **HOLLIDAY**

v.

**STATE.**

6 Div. 136.

Court of Criminal Appeals of Alabama.

Feb. 17, 1976.

Thomas Nicholson, Jasper, for appellant.

William J. Baxley, Atty. Gen., and Ellis D. Hanan, Asst. Atty. Gen., Montgomery, for the State.

HARRIS, Judge.

Appellant was indicted for burglary in the first degree. With counsel present at arraignment he pleaded not guilty and not guilty by reason of insanity. The case proceeded to trial before a struck jury. After the State had put on several witnesses, appellant and his attorney approached the bench and made known to the Court that appellant and his attorney had reached an agreement with the prosecution that appellant desired to plead guilty to burglary in the second degree and receive a sentence of ten years in the penitentiary.

Mrs. Violet Harper testified that on November 10, 1974, she lived on Highway 78 in Walker County about six or seven miles from Birmingham, Alabama; that between five and six o'clock on the afternoon of that date she was alone in her home and was in the back room ironing some clothes. She had just taken a bath and had on a nightgown and a pair of underpants. She had both the back door and the front door to her home securely locked.

She heard a knock on the front door and she went to the front and lifted the night latch to see who was there. She saw a black man standing on the porch near the front door. This man asked her if she knew someone whose name she could not recall, who was supposed to live around Sipsey or the Blackwater area. She told him she did not know such person but if he would go to a supermarket about two miles down the road, they could probably tell him exactly where they lived. She said the black man turned as if to walk off the porch and then hesitated and looked at her and asked if she had a cigarette. She told him no as she did not smoke, and she immediately closed the door. At that time she didn't see a car parked in her driveway. She went to a front window to see if the man was leaving and saw him going at a fast pace to the rear of her home.

At this point she went back to the front door and unlocked the door to leave the house. Her back door had three glass panels and while she was trying to unlatch the three latches on the front screen, she heard the glass break in the back door. As she was trying to get the last latch on the front screen open, the man grabbed her by the arm and said, "No, you don't." He jerked her backwards and she fell flat on her back and the man put his knee on her stomach and removed her underpants. She kept begging him not to hurt her and that he could have her money and everything in the house he wanted. He told her all he wanted was _____ and took his hand and tried to force himself into her but he had difficulty penetrating her. He took off his pants, underclothes and shoes and tried to penetrate her again without success. He then took her by one arm and leg and dragged her to the bedroom where he pushed her flat on her back on the bed and got over her and again tried to penetrate her but failed. He then told her he was going to his car and get some whiskey and was going to spend the night with her. He told her if she tried to leave the bedroom, he would kill her.

She further testified that he smelled strongly of the odor of alcohol and was staggering around when he was trying to put his clothes back on. After he got his clothes on, he went out the back door and she managed to unhook the last latch on the screen door, and jumped off the porch and ran down Highway 78 to a neighbor's house where she collapsed in the yard. The neighbors came to her and she told them what had occurred. She had on only her nightgown and the neighbors carried her back to her home and helped her dress and carried her to a local hospital.

She stated as she was running from her house, she saw a maroon colored Chevrolet parked in her driveway. Someone called the Police and Sheriff's Departments but she did not know who made the calls.

Appellant left the scene of the crime and wrecked his automobile. Officers went to the scene of the accident and arrested ap-

pellant and carried him to the Sheriff's Office where he was given the *Miranda* rights and warnings. He signed a waiver of rights form and stated he did not want a lawyer. He made a statement to the officers in which he admitted breaking into the home of the victim.

A very extensive voir dire hearing was held out of the presence and hearing of the jury to determine the voluntary character of the confession. At this hearing the *Miranda* rights were read from a card carried by the Deputy Sheriff and also the *pre-Miranda* predicate was laid. At the conclusion of this hearing the Court ruled the confession was knowingly, intelligently and voluntarily made.

Before accepting appellant's plea of guilty the Court advised him of his *Boykin* rights, not once but twice. Appellant, his attorney and the trial judge signed an *Ireland* form which contained each and every right compelled by *Boykin* before the guilty plea was accepted. He was informed of his right to a public trial by jury, the right against compulsory self-incrimination, the right to be confronted by witnesses against him and to have witnesses in his behalf, and the minimum and maximum sentences that could be imposed.

During the colloquy between appellant and the Court, appellant told the Court that he fully understood his rights and he wanted to plead guilty to burglary in the second degree knowing full well that he was going to get ten years in the penitentiary. It was also clearly understood that he was not going to get probation but he had a right to apply for probation. All of these matters, including the *Boykin* rights, are clearly set forth in the minute entry.

Upon authority of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 and *Twyman v. State*, 293 Ala. 75, 300 So. 2d 124, this case is affirmed.

Affirmed.

All the Judges concur.